CHAUTAUQUA COUNTY ENVIRON-
MENTAL DEFENSE COUNCIL,
Plaintiff,

v.

Brock ADAMS, Secretary of Transportation, and William C. Hennessy, Commissioner of New York State Department of Transportation, Albany, New York, Defendants.

No. Civ–73–576.

United States District Court,
W. D. New York.

May 17, 1978.

---

Richard J. Lippes, Buffalo, N.Y., for plaintiff.

Richard J. Arcara, U. S. Atty., Buffalo, N.Y. (C. Donald O'Connor, Asst. U. S. Atty.,

Buffalo, N.Y., and Richard H. Thomas, FHWA, Region 1, Albany, N.Y., of counsel), for Brock Adams, United States Secretary of Transportation.

Falk, Siemer, Glick, Tuppen & Maloney, Buffalo, N.Y. (Alvin M. Glick, and Michael C. Trimboli, Buffalo, N.Y., of counsel), for William C. Hennessy, Commissioner, New York State Department of Transportation.

CURTIN, Chief Judge.

This case involves the proposed construction of a highway bridge over Lake Chautauqua in southwestern New York State as part of the Southern Tier Expressway [hereinafter "STE"]. Currently pending before this court is defendants' motion to vacate the preliminary injunction against construction which was filed by this court on May 20, 1974, 375 F.Supp. 1158 (W.D.N.Y.1974),[1] and affirmed by the Second Circuit Court of Appeals on February 13, 1975, 511 F.2d 489 (2d Cir. 1975). The injunction was issued pending compliance with the National Environmental Policy Act of 1969, 42 U.S.C. §§ 4321 et seq. [hereinafter "NEPA"].

After issuance of the injunction the New York State Department of Transportation [hereinafter "NYSDOT"], the Pennsylvania Department of Transportation [hereinafter "Penn DOT"], and the Federal Highway Administration [hereinafter "FHWA"] took steps to process and complete an Environmental Impact Statement [hereinafter "EIS"] in compliance with NEPA for the entire length of the corridor from Hinsdale, New York to Erie, Pennsylvania. This was prepared and processed in conjunction with Environment Consultants, Inc. [hereinafter "ECI"]. After nearly four years the United States Secretary of Transportation gave final approval to the project in February 1978.

A brief summary of the evaluation process follows. First, upon completion of extensive research into the Southern Tier region and preparation of a number of reports covering the findings, an assessment report which examined 87 possible transportation solutions to the region's economic stagnation and isolation problems was issued in February 1976.[2] The report recommended that substantial improvement be made in the region's highway system. Thereafter, in July 1976, a project report was published which proposed 12 alternative corridors between Hinsdale and Erie.[3]

A Draft Environmental Impact Statement [hereinafter "DEIS"] was then prepared and made available to the public and to appropriate federal, state, and local agencies on November 4, 1976. Public hearings were held December 14–16, 1976 in Jamestown and Salamanca, New York and Greenfield Township, Pennsylvania.

After comments were received, processing of the Final Environmental Impact Statement [hereinafter "FEIS"] began. In completed form it comprises three volumes and contains 1857 pages. It recommends Alternative # 1, the "Southern Tier Expressway Route," which from Hinsdale goes to Olean, Salamanca, and Jamestown across Lake Chautauqua to Sherman and then to I–90 near Erie, Pennsylvania.

The FEIS was adopted by NYSDOT on April 13, 1977 and by the FHWA on September 23, 1977. Legal notice of FEIS availability was published locally in October 1977. In addition, the FEIS was sent to the Council on Environmental Quality and notice of availability was published in the Federal Register on Friday, October 14, 1977, 42 F.R. 55253 at 55256.

FHWA, however, required further documentation before making its recommenda-

1. This action was originally filed under the title *Royal Steubing, et al. v. Claude Brinegar and Raymond T. Schuler*, 375 F.Supp. 1158 (W.D.N.Y.). The title has been amended to reflect that only the single plaintiff remains and that Messrs. Adams and Hennessy have been substituted as the successors to Messrs. Brinegar and Schuler as defendants.

2. Assessment Report: An Evaluation of Transportation and Economic Problems and Alternative Solutions in the Southern Tier Region (ECI, February 1976) [Ex. I].

3. Project Report I: An Identification and Discussion of Specific Alternative Highway Corridors in the Southern Tier Region (ECI, July 1976) [Ex. J].

tion regarding the portion of the project between Bemus Point and I–90. Two supporting position papers were then presented by NYSDOT, one of which is included as an addendum to the FEIS (Ex. N).

On February 2, 1978 and February 9, 1978 the United States Department of Transportation [hereinafter "USDOT"] and FHWA, respectively, concurred in the recommendation of Alternative # 1, including the construction of the Lake Chautauqua bridge. The FEIS was then transmitted to the Environmental Protection Agency with notice of its availability published in the Federal Register on March 3, 1978, 43 F.R. 8844 at 8846.

In reaching my decision I have reviewed carefully the FEIS, the affidavits and legal memoranda submitted by the parties, and have heard oral argument on May 1, 1978 and May 4, 1978.

## SCOPE OF ISSUE

Although my preliminary injunction order was directed solely at bridge construction over Lake Chautauqua (Parcel 5c), the defendants have prepared their EIS for the entire STE from Hinsdale to the New York-Pennsylvania line. Plaintiff has urged the court to consider not only NEPA compliance on the bridge section but also on the proposed routes as they affect the eastern section of the highway near Allegheny State Park and Salamanca, New York.

Plaintiff argues that if the court were to approve bridge construction, there would be no remaining alternative but to complete the STE sections which affect the Allegheny. State Park area. Based on *Greene County Planning Board v. F.P.C.,* 559 F.2d 1227 (2d Cir. 1976), plaintiff argues that to consider only the bridge issue would be to "segment" the project and to present the danger of improperly "piggybacking" several related projects only to discover that the overall combination of the projects may do more harm than good. *See Greene County, supra* at 1232.

I have carefully examined the proposed alternatives for the STE east of Jamestown. *See* Appendix Map. It is clear that, regardless of the decision regarding bridge construction, possible alternative routes may extend from Hinsdale to Randolph (Points A–E on Map) which avoid the numerous NEPA and § 4(f) questions in the Salamanca area raised by DOT.[4] Therefore I will consider the question of defendants' compliance with environmental considerations on the Lake Chautauqua bridge only. Further objections to the STE extension in the Allegheny State Park area should be the subject of a separate action.

## LEGAL STANDARD

The general standard for review of the lead agency's compliance with NEPA is whether its consideration of the factors listed in 42 U.S.C. § 4332(2)(c)[5] was arbitrary,

4. Although EPA had originally raised some questions about completion of the STE in this area in its comments on the DEIS in January 1977, it has dropped this opposition after several meetings with the defendants. *See* letter from Barbara Metzger, Chief of the EPA Region II Environmental Impacts Branch to FHWA dated October 21, 1977.

5. Section 4332(2)(c) states that all agencies of the Federal Government shall—

\* \* \* \* \*

(C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—

(i) the environmental impact of the proposed action,

(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

(iii) alternatives to the proposed action,

(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.

Prior to making any detailed statement, the responsible Federal official shall consult with and obtain the comments of any Federal agency which has jurisdiction by law or special expertise with respect to any environmental impact involved. Copies of such statement and the comments and views of the appropriate Federal, State, and local

**380**

capricious, an abuse of discretion, or otherwise not in accordance with law or without observance of procedure required by law. 5 U.S.C. § 706(2)(A)–(2)(D); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 413–414, 91 S.Ct. 814, 28 L.Ed.2d 136 (1973); *Chelsea Neighborhood Assns. v. U. S. Postal Service*, 516 F.2d 378, 387 n. 23 (2d Cir. 1975).

■ In reviewing the EIS this court's task is merely to determine whether it was compiled in objective good faith and whether the resulting statement would permit a decision-maker to fully consider and balance the environmental factors. *County of Suffolk v. Secretary of the Interior*, 562 F.2d 1368, 1383 (2d Cir. 1977); *see also Monroe County Conservation Council v. Adams*, 566 F.2d 419, 422 (2d Cir. 1977), *cert. denied*, —— U.S. ——, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978).

In making such a determination a court is governed by the "rule of reason," under which an EIS need not be exhaustive to the point of discussing all possible details bearing on the proposed action but will be upheld as adequate if it has been compiled in good faith and sets forth sufficient information to enable the decision-maker to consider fully the environmental factors involved and to make a reasoned decision after balancing the risks of harm to the environment against the benefits to be derived from the proposed action, as well as to make a reasoned choice between alternatives.

*County of Suffolk, supra* at 1375: *Monroe County Conservation Council, supra* at 422.

■ Furthermore, the court must not substitute its judgment for that of the agency as to the environmental consequences of its actions. *See Kleppe v. Sierra Club*, 427 U.S. 390, 410 n. 21, 96 S.Ct. 2718, 49 L.Ed.2d 576, *quoting Scenic Hudson Preservation Conference v. FPC*, 453 F.2d 463, 481 (2d Cir. 1971). The only role for the court is to ensure that the agency has taken a "hard look" at environmental consequences; it cannot "interject itself within the area of discretion of the executive as to the choice of the action to be taken." *Kleppe, supra* at 410 n. 21, 96 S.Ct. at 2731, *quoting National Resources Defense Council v. Morton*, 148 U.S.App.D.C. 5, 16, 458 F.2d 827, 838 (1972).

■ The plaintiff bears the burden of establishing the inadequacy of the final EIS. *Monroe County Conservation Council v. Adams, supra* at 422. Here the plaintiff has raised several objections to the motion to vacate the preliminary injunction under both NEPA and § 4(f) of the Department of Transportation Act of 1966, 49 U.S.C. § 1653(f).[6] Since the same standard for review must be applied to both statutes,[7] I will examine the plaintiff's claims in the order in which they were presented.

*NEPA COMPLIANCE*

To comply with NEPA provisions the Secretary of Transportation must include with his recommendation for bridge construction a detailed statement which meets the terms of 42 U.S.C. § 4332.

■ Plaintiff's first claim is that the Secretary of Transportation's decision was

agencies, which are authorized to develop and enforce environmental standards, shall be made available to the President, the Council on Environmental Quality and to the public as provided by section 552 of Title 5, and shall accompany the proposal through the existing agency review processes;

6. Section 1653(f) of Title 49, United States Code, states in pertinent part:

[T]he Secretary [of Transportation] shall not approve any program or project which requires the use of any publicly owned land from a public park, recreation area, or wildlife and waterfowl refuge of national, State,

or local significance as determined by the Federal, State, or local officials having jurisdiction thereof, or any land from an historic site of national, State, or local significance as so determined by such officials unless (1) there is no feasible and prudent alternative to the use of such land, and (2) such program includes all possible planning to minimize harm to such park, recreational area, wildlife and waterfowl refuge, or historic site resulting from such use.

7. *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416–417, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

based upon the mistaken assumption that the State of Pennsylvania was prepared to go ahead with construction of its section of the STE from Interstate 90 to the Pennsylvania-New York border. Since this information was not before the Secretary, argues plaintiff, he was unable to make an informed and objective decision as mandated by NEPA. *See Greene County Planning Board v. FPC, supra.*

Plaintiff bases his claim upon letters from Pennsylvania State Representative Forest W. Hopkins to Pennsylvania Governor Milton Shapp, dated March 22, 1978, and from Pennsylvania Secretary of Transportation, James B. Wilson to Representative Hopkins, dated March 23, 1978, which indicate that the Pennsylvania highway construction program is being held back for the foreseeable future due to financial constraints. Since this information is not found in the FEIS or the addenda, plaintiff contends that the Secretary was unaware of this important consideration in arriving at his decision.[8]

The defendants argue that the plaintiff's position on this point is without merit. The question is handled in the FEIS comments to points raised by the Town of Westfield, where it is stated that although Pennsylvania was in an "austerity period" there was every reason to believe that no inordinate delay would result. Ex. A-3 at 136. This position is supported by the telegram dated April 28, 1978 from Secretary Wilson to NYSDOT Commissioner William C. Hennessy which reaffirms Pennsylvania's continued interest in the STE, and indicates that when financial and priority constraints are cleared the state expects to activate the project. The defendants also read into the court record a letter from Secretary Adams dated December 13, 1977 and a speech which he gave on January 26, 1978 which demonstrate his familiarity with the current Pennsylvania moratorium on highway construction.

Based upon the documents presented by the parties I must conclude that the Secretary was familiar with the financial problems confronting construction of the Pennsylvania section of the STE. Therefore his decision to adopt Alternate # 1 cannot be invalidated as based upon any mistaken assumptions or an incomplete record.

█ Plaintiff also argues that the defendants failed to comply with NEPA since they failed to properly circulate the two addenda to the FEIS to all the federal agencies and to the public. The affidavit of Joseph M. Tocke, Project Manager for the STE, dated May 1, 1978, states that the addenda in question were circulated to all agencies and individuals that made substantive comments on the DEIS. Under 40 CFR § 1500.10(b) and 23 CFR § 771.14(d)(4), copies of the FEIS, with comments attached, are to be sent to all federal, state and local agencies and private organizations that made substantive comments on the DEIS. Based upon Mr. Tocke's affidavit, I find that the defendants have complied with this requirement.

█ The major objection made by the plaintiff is that the defendants have neglected to deal adequately with, or in some instances completely ignored, the comments from other federal agencies regarding the environmental consequences of construction of the Lake Chautauqua Bridge. The particular agencies in question are the Environmental Protection Agency [hereinafter "EPA"] and the Department of Interior [hereinafter "DOI"].

Under § 309 of the Clean Air Act of 1970, 42 U.S.C. § 1857h-7, the EPA Administrator is required to review and comment in writing on "any matter relating to statutory duties and responsibilities" contained in any "newly authorized Federal project for construction." The § 309 statement has been made part of the FEIS. Ex. A-3 at 47. EPA indicates its disapproval of bridge construction over Lake Chautauqua in gen-

---

8. This information holds significance since it would make alternative routes which do not include the Lake Chautauqua Bridge more desirable such as those which terminate at West-

field, New York. Consideration of this possibility was mentioned in the Department of Interior comment letter dated September 9, 1977. *See* Ex. A-4.

eral language. The defendants comment on this position on a paragraph-by-paragraph basis. Ex. A–3 at 53. During the second court hearing the defendant FHWA introduced a copy of a letter dated October 21, 1977 from Barbara M. Metzger, Chief, EPA Region II Environmental Impact Branch. This letter states that after review of the FEIS it [EPA] conditionally approved the Corps of Engineers permit to excavate and fill the Allegheny River and adjacent wetlands for the proposed expressway. It further indicates that it expresses no objection to the project, as designed and with the conditions mentioned. No mention is made of any further objection to the Lake Chautauqua Bridge. In light of this document it appears that EPA holds no strong objection to the bridge project.[9]

The DOI also raised a number of concerns regarding bridge construction in letters commenting upon the DEIS dated April 13, 1977 and September 9, 1977. Ex. A–4. Although these concerns are related primarily to review under § 4(f), they also may be viewed in regard to EPA compliance. The major concerns related to the damage to Lake water, fish and wildlife from extensive use of salt on the highway as well as the .potential for toxic substance spills. However, the September 9 letter states:

> Based on (1) information in the PFES, (2) the fact that Lake Chautauqua creates a 20-mile long barrier in the path of the existing STE, and (3) assuming that the Secretary of Transportation finds that the transportation objectives of the STE can only be satisfied by tieing [sic] the STE to I–90 at points M or N in Pennsylvania [see Appendix A], we would conditionally concur with the proposed response to both provisions of § 4(f) as they pertain to the proposed crossing of Lake Chautauqua from point H westward. . . . For this segment of the project,

we believe the special expertise of the Secretary of Transportation is paramount in making such a finding.

Furthermore, in a letter from Larry E. Meierotto, Deputy Assistant to the Secretary of the Interior, dated July 7, 1977, to Martin Convisser, Acting Assistant Secretary for Environment, Safety and Consumer Affairs in the United States Department of Transportation, it is stated that the Interior Department has no objections to that portion of the highway in Chautauqua County, New York. Upon review of these comments by DOI, I must conclude that no further. agency objections exist which would require consideration by the Secretary.

## SECTION 4(f) COMPLIANCE

As pointed out previously, § 4(f) compliance has been raised by the plaintiff as an issue to be considered in ruling upon the motion to vacate the injunction. Although this question was not ruled upon when the injunction was entered, it had been raised by the plaintiff. Section 4(f) concerns are involved because Lake Chautauqua has been designated publicly owned land from a recreational area. A project for the "use" of such land cannot be approved by the Secretary of Transportation unless there is no feasible and prudent alternative to its use and planning to minimize harm to the recreational area takes place.

During the evaluation process in this case the defendants reduced an original selection of 87 alternative routes down to 12 routes and the no-build option for further consideration.[10] Of these 12, four routes utilize the bridge ( # # 1, 4, 6, 8), two have an impact on the lake, the East Lake Chautauqua Route ( # 5) and the Jamestown Route ( # 10), while the remaining routes do not use Lake Chautauqua ( # # 2, 3, 7, 9,

---

9. I am somewhat disturbed by the delay in introduction of the EPA letter until the last court hearing. However, because of the need for an immediate decision on the defendants' motion, I have given due consideration to the letter without requiring any further affidavit from EPA.

10. A detailed discussion of the relative advantages and disadvantages of the alternate routes may be found at pages 342–402 of the FEIS. Ex. A–1.

11, 12 and no-build). The conclusion in the FEIS is that while all of the last seven routes are feasible, none completely satisfy the purposes of the project. In addition, the unique or excessive impacts from implementation of each of these routes bars a finding that it constitutes a prudent alternative.

I have carefully reviewed the alternate routes as presented in the FEIS. I concur with the conclusion that the six routes which have no impact on the lake either fail to meet the STE project purpose, pose environmental problems for agriculture and wetlands which exceed those involved in bridge construction, or would require additional displacement of homes and business. As for the other alternatives, the Jamestown route would require substantial displacement as well as adding to air and noise pollution, while the East Chautauqua route would have a negative impact upon local vineyards, aggravate sewage and runoff problems in the lake and would have extensive visual impact along most of the lake's eastern shore from Bemus Point north. The no-build alternative would provide none of the benefits to regional access and economy and poses both air and noise pollution problems.

Based on my review, I find substantial evidence that no prudent alternative to bridge construction exists. Thus defendants have complied with § 4(f) requirements. Nevertheless, I have taken note of the questions raised by DOI comments on potential problems from bridge construction especially with regard to drainage of road salt and potential toxic spills. I therefore strongly urge the defendants to cooperate with DOI in their bridge design plans to minimize these problems.

CONCLUSION

In summary, I have limited my review of defendants' compliance to the portion of the STE project related to Lake Chautauqua bridge construction.

Since I find that defendants have met the requirements of NEPA and of § 4(f) of the Department of Transportation Act of 1966, I hereby vacate the preliminary injunction against bridge construction.

So ordered.

Appendix to follow.

APPENDIX A